UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT M.[1],

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 23-11842 |
| v. | | Laurie J. Michelson<br>United States District Judge |
| COMMISSIONER OF<br>SOCIAL SECURITY, | | David R. Grand<br>United States Magistrate Judge |
| | Defendant. | |

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

Plaintiff Scott M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act during the relevant time

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

period is supported by substantial evidence.  Accordingly, the Court **RECOMMENDS**
that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**,
Plaintiff's Motion for Summary Judgment **(ECF No. 10)** be **DENIED**, and that pursuant
to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Plaintiff filed his application for DIB in March 2021, and alleged an amended
disability onset date of March 24, 2021,[2] at which time he was 52 years old.  (ECF No. 4-
1, PageID.172-73; *id.*, PageID.55, 73).  At 5'6" tall, he weighed approximately 175 pounds
during the relevant time period.  (*Id.*, PageID.74).  He completed some college education.
(*Id.*, PageID.54).  He lives in a ranch home with his wife, 22-year-old son, and 17-year-old
daughter.  (*Id.*, PageID.52).  Previously, Plaintiff worked as a carpenter and spent time in
the military and Army Reserves.  (*Id.*, PageID.39, 47, 204).  Plaintiff alleges a disabling
condition of traumatic brain injury, arthritis, adjustment disorder, neuropathy, and tinnitus.
(*Id.*, PageID.74).

After Plaintiff's application for DIB was denied at the initial level on December 2,
2021 (*Id.*, PageID.73), he timely requested an administrative hearing, which was held on
January 24, 2023, before ALJ Carol Guyton (*Id.*, PageID.47-72).  Plaintiff, who was
represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert
("VE") Harry Cynowa.  (*Id.*).  On March 23, 2023, the ALJ issued a written decision

---

[2] At his hearing before the ALJ, Plaintiff moved to amend his alleged onset date to March 24,
2021.  (ECF No. 4-1, PageID.55).

finding that Plaintiff was not disabled between his alleged onset date (March 24, 2021),

and the date of the ALJ's decision (March 23, 2023).  (*Id.*, PageID.30-41).  On May 30,

2023, the Appeals Council denied review.  (*Id.*, PageID.14-18).  Plaintiff timely filed for

judicial review of the final decision.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's

medical record, function and disability reports, and testimony as to his conditions and

resulting limitations during the relevant time period.  Instead of summarizing that

information here, the Court will make references and provide citations to the transcript as

necessary in its discussion of the parties' arguments.

### B.   The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant

part as the:

> [I]nability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to

be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act.  At Step One, the ALJ found that Plaintiff had engaged in substantial gainful activity during the "First Quarter 2022," but that there had been a continuous 12-month period during which he did not engage in substantial gainful activity, and that the decision addresses this relevant period.  At Step Two, the ALJ found that, during this period of time, Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, lumbago with sciatica, osteoarthritis of the bilateral knees, partial thickness tear and impingement of the left shoulder, obesity, headaches, major depressive

disorder, anxiety, post-traumatic stress disorder ("PTSD"), and history of traumatic brain injury. (*Id.*, PageID.33). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*, PageID.33-35).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that, through the date of the decision, he was capable of performing light work, with the following additional limitations:

> push and pull occasionally with the left upper extremity; occasional climbing of ramps and stairs, and balancing, kneeling, stooping, and crouching; no crawling or climbing of ladders, ropes, or scaffolds; no overhead reaching with left upper extremity; frequent handling and fingering with bilateral upper extremities; avoid concentrated exposure to extreme cold, heat, and vibration; no exposure to hazardous machinery and unprotected heights; no more than moderate noise exposure; able to understand, remember and carry out simple, routine tasks involving no more than simple, short instructions and can use judgment to make simple, work related decisions with occasional work place changes; no interaction with general public; and occasional interaction with coworkers.

(*Id.*, PageID.35).

At Step Four, the ALJ found that, through the date of the decision, Plaintiff was unable to perform any past relevant work. (*Id.*, PageID.39). At Step Five, the ALJ found, based in part on the VE's testimony, that during the relevant time period, given Plaintiff's age, education, work experience, and RFC, he was capable of performing unskilled light work as a hand packager (35,000 jobs nationally), small products assembler (35,000 jobs), and visual inspector checker (35,000 jobs). (*Id.*, PageID.40). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*, PageID.40-41).

5

C.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence …   is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In his motion for summary judgment, Plaintiff raises three arguments. First, he argues that substantial evidence does not support the ALJ's determination that he could perform the standing and walking requirements of light work.[3] (ECF No. 10, PageID.1955-62). Second, he argues that the ALJ failed to properly evaluate the opinions of the state agency psychological consultants. (*Id.*, PageID.1962-65). Third, he argues that the ALJ

---

[3] The Commissioner contends that Plaintiff's cursory argument that his "reaching and handling limitations" also precluded light work "should be deemed waived," as he "fails to develop that claim in his argument, including failing to cite to any evidence that supports his position." (ECF No. 12, PageID.1975). The Court agrees that Plaintiff waived any arguments related to reaching and handling limitations. A review of Plaintiff's motion reflects that he makes a single passing reference under the "Summary of the Argument" section that "[g]iven the evidence of [his] reaching and handling limitations from his severe (and purportedly non-severe) impairments, [he] cannot perform light work as found by the ALJ," but he fails to meaningfully develop that argument in his motion. (ECF No. 10, PageID.1955); *see McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the courts to . . . put flesh on its bones."); *see also Moats v. Comm'r of Soc. Sec.*, No. 20-00265, 2021 WL 2905079, at *18 (N.D. Ohio Jan. 8, 2021). Indeed, Plaintiff did not respond to the Commissioner's waiver argument in his reply brief, nor did he mention the issue of reaching and handling limitations.

failed to properly evaluate the third-party function report from his wife.  (*Id.*, PageID.1965-66).  The Court addresses each argument in turn.

<em>1.   Plaintiff Fails to Show Reversible Error in the ALJ's RFC Determination, which is Supported by Substantial Evidence</em>

Plaintiff first argues that the ALJ's determination that he could perform the standing and walking requirements of light work is not supported by the record evidence, which he contends "reflects an extensive history of injury, treatment, and surgery for the lower extremities . . ." (ECF No. 10, PageID.1955, 1957).  The Commissioner responds that "the ALJ thoroughly considered the evidence regarding Plaintiff's knee impairment in formulating the RFC finding," which is "consistent with the medical reports, prior administrative medical findings, and the consultative examiner's opinion" and thus supported by substantial evidence.  (ECF No. 12, PageID.1985).  After careful review of the record evidence and the parties' arguments, the Court concurs with the Commissioner.

Here, the ALJ's decision contains a discussion of the medical evidence concerning Plaintiff's left knee impairment during the relevant period.  To start, the ALJ recognized Plaintiff's history of knee issues that predates his amended alleged onset date in March 2021, noting Plaintiff's "history of bilateral knee arthroscopic surgeries" since 2012 (ECF No. 4-1, PageID.37, 287), and that in November 2019, Plaintiff had received an orthopedic knee evaluation for intermittent "lateral-sided knee pain, numbness, and tingling which radiates into the lateral side of the foot," but "denie[d] being off work due to his symptoms."  (*Id.*, PageID.37, 288-89).  A physical exam in November 2019 revealed "stable" ligaments, only "mild" pain with forced extension and no pain with forced flexion,

8

an x-ray of Plaintiff's left knee indicated "*mild* patellofemoral degenerative changes" but "[o]therwise, maintained joint space of all three compartments," and Plaintiff was diagnosed with osteoarthritis in his left knee. (*Id.*, PageID.36, 290) (emphasis added).

The ALJ also discussed Plaintiff's treatment notes with his primary care physician, Dr. Scott Anthony McPhilimy, D.O., through at least February 2022, which provide substantial evidence in support of a functional capacity to perform the limited range of light work determined by the ALJ. (ECF No. 4-1, PageID.37-38). For instance, on January 28, 2020, Plaintiff complained of "pain in the right lower back and right buttocks area . . . with driving," but "*[n]o worsening with walking or standing*." (ECF No. 4-1, PageID.386) (emphasis added). A physical exam with Dr. McPhilimy revealed that Plaintiff had "[p]ain with palpation of the left buttocks area," but his range of motion remained "within normal limits" and his muscle strength was "5/5" in "all major muscle groups." (*Id.*, PageID.388). Plaintiff was diagnosed with lumbago and sciatica on his left side, prescribed Medrol dose packs, and was advised of the *possibility* of physical therapy if his pain did not improve. (*Id.*, PageID.390). On March 26, 2021, just two days after his amended alleged disability onset date, Plaintiff complained primarily of left shoulder pain, but as to his ability to stand or walk, a physical exam revealed his gait was "normal," he could "walk several steps, then turn, and come back," his balance was "easy," and his "turns are accomplished smoothly." (*Id.*, PageID.328). Plaintiff's extremities also revealed no clubbing, cyanosis, or petechiae, he had 5/5 strength in all of his "major muscle groups," and he was diagnosed with left shoulder pain, tension headaches, and cervicalgia. (*Id.*).

Treatment notes from April 20 and 27, 2021, reflect that Plaintiff saw Dr.

McPhilimy twice for complaints of "continuous pain in [the] left shoulder" and "disability paperwork," and physical exams reflect that his gait was normal, he could walk several steps and then turn "smoothly" and come back with "easy" balance and "arms swinging at the sides,"[4] there was no clubbing, cyanosis, or petechiae in the extremities, and he had 5/5 strength of all major muscle groups.  (ECF No. 4-2, PageID.1833, 1841-42).

On May 25, 2021, Dr. McPhilimy filled out a "Functional Capability Form – Army Combat Fitness Test (ACFT)," in which he opined that Plaintiff was able to "[r]ide in a military vehicle wearing helmet (~3 lbs), body armor (~30 lbs), and load bearing equipment (~10 lbs) without worsening condition"; "[w]ear helmet (~3 lbs), body armor (~30 lbs), and load bearing equipment (~10 lbs) without worsening condition"; lift and carry up to 15 pounds; and participate in a "2.5 mile timed walk."  (ECF No. 4-1, PageID.1101).[5] Notably, Dr. McPhilimy left blank the portion of the form used for assessing any "Standing Limitation" or "Walking Limitations/Restriction in all terrains with Standard Field Gear (40 lbs) . . ."  (*Id.*).

---

[4] The Court notes that although the record also reflects Dr. McPhilimy occasionally observing Plaintiff to have an "abnormal" gait, those observations were *prior* to his amended alleged disability onset date.  (*E.g.,* ECF No. 4-1, PageID.344, 361, 376, 976, 993, 1008; ECF No. 4-2, PageID.1290).  Plaintiff's contention that those records prove his post-onset date claim of disability lack merit.  (ECF No. 13, PageID.1994).  Moreover, other medical records from shortly before Plaintiff's amended alleged disability onset date indicate that Plaintiff did not have issues with walking.  (*E.g.*, ECF No. 4-1, PageID.1683 (10/30/2020 progress note indicating no antalgic gait, and that Plaintiff could return to work "with no restrictions"), 1687).

[5] Dr. McPhilimy found that Plaintiff was not physically and mentally able to "carry and fire an individual assigned weapon (~8 lbs) that requires couching, kneeling on one or both knees, lying prone or standing all while wearing a helmet (~3 lbs), body armor (~30 lbs) and load bearing equipment (~10 lbs)"; and could not "[m]ove greater than 40 lbs (back/duffel b ag) while wearing a helmet (~3 lbs), body armor (~30 lbs), and load bearing equipment (~10 lbs) up to 100 yards." (ECF No. 4-1, PageID.1101).

On November 30, 2021, Dr. McPhilimy performed a physical exam of Plaintiff and again found his gait to be "normal." (*Id.*, PageID.1812).

On February 1, 2022, Plaintiff saw Dr. McPhilimy for a social security "disability physical." (ECF No. 4-2, PageID.1796). While Plaintiff complained that his bilateral knee pain prevented him "a lot of bending or crouching," "stand[ing] for long periods of time or go[ing] for walks," and "tak[ing] the stairs or driving due to not being able to brake," physical exams showed grossly normal findings with no obvious musculoskeletal deformities, normal gait, no gross motor deficits, no weakness, and intact strength. (*Id.*, PageID.1798). Dr. McPhilimy diagnosed Plaintiff with "Pain in unspecified knee" and recommended that he "[f]ollow-up in 12 months if [he] still experiences pain in his knees." (*Id.*, PageID.1798-99).

In sum, Dr. McPhilimy's relevant treatment notes consistently reflect relatively normal findings in Plaintiff's ability to stand and walk, and culminate in a conservative recommendation for a "follow up" in one year if he continued to experience knee pain, all of which aptly supports the ALJ's RFC. *See Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (conservative and routine treatment is a valid consideration in assessing limitations).[6]

---

[6] Although Plaintiff does not challenge the ALJ's evaluation of Dr. McPhilimy's opinions, and therefore waived the issue, *see Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived), it is worth noting that Dr. McPhilimy at one point filled out: (1) a "Carpenters' Pension Trust Fund" medical report on April 27, 2021, opining that Plaintiff was "Totally and Permanently Disabled from performing any work in the trade" due to left shoulder pain, neck pain, bilateral knee pain, headaches, anxiety/depression, and traumatic brain injury (ECF No. 4-2, PageID.1839); and (2) a medical source statement on February 7, 2022, opining that Plaintiff's impairments would affect his ability to lift, carry, stand, and walk but leaving blank any specific functional limitations as "deferred for functional capacity exam";

In addition to Dr. McPhilimy's treatment notes, the ALJ discussed Plaintiff's independent medical examination with Dr. William H. Qutub, M.D., performed on July 31, 2021, during which Dr. Qutub observed that:

> [Plaintiff] appeared comfortable while seated and without pain mitigating mannerisms.  He elevated his feet to his lap after kicking off his shoes and used his left hand to remove both his right and left socks.  He arose spontaneously and unaided from a seated position.  He did not appear uncomfortable getting on and off the examination table and mobilized unaided throughout the exam with adequate effort and no distinct inconsistences.

(ECF No. 4-2, PageID.1714).  A physical exam also revealed normal findings for Plaintiff's coordination, station, and gait, "[n]o assistive device was brought or used," there was "[n]o discernable discomfort" in his range of motion for his cervical spine, hip joint, and knee joint, and his seated and supine straight leg tests were negative.  (*Id.*, PageID.1715).  As for a functional assessment, Dr. Qutub opined that "[t]here are no recommended limitations regarding the number of hours that [Plaintiff] should be able to sit, [stand or walk] during a normal eight-hour workday"; he could lift and carry 15-20 pounds frequently and 30-35 pounds occasionally, except that his "[l]eft shoulder should be 10 pounds lower at every

---

Plaintiff did not need a cane or other assistive device for occasional standing or walking; his sitting was unaffected; his legs did not need to be elevated with prolong sitting; it was "unknown" how many hours Plaintiff would have to rest in an 8-hour workday; he could frequently twist; and he could occasionally stoop, bend, crouch, squat, and climb ladders and stairs.  (*Id.*, PageID.1786-87).

The ALJ reasonably found these opinions to be "unpersuasive," stating that they were inconsistent with the medical evidence of record, particularly Plaintiff's treatment records which noted "improved left shoulder functioning and grossly normal physical examinations," and that they were "consistent solely in the fact that they acknowledge[] that impairments exist and some limitation is needed, but fail to assess the severity, duration, frequency that the objective findings represent as to this claimant."  (ECF No. 4-1, PageID.38).

amount"; "[b]ending, stooping, squatting, crouching, and/or crawling activities should be feasible frequently; "and "[t]here are no assistive devices recommended at this time."  (*Id.*, PageID.1716-17).[7]

Dr. Qutub's opinion, which the ALJ found to be "generally persuasive" (ECF No. 4-1, PageID.38), is also consistent with the opinions of the state agency physicians. Specifically, on October 25, 2021, Dr. Jennie Rose, M.D., opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for 6 hours in an 8-hour workday; sit (with normal breaks) for about 6 hours in an 8-hour workday; and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.  (ECF No. 4-1, PageID.79).  On May 17, 2022, Dr. Adrienne Wagner, D.O., opined the same physical functional limitations for Plaintiff as Dr. Rose.  (*Id.*, PageID.87-89).  The ALJ found these state agency opinions to be "persuasive," as they limited Plaintiff to "light work with appropriate postural, manipulative, and environmental restrictions."  (*Id.*, PageID.38).

Based on all of the above, the ALJ's RFC finding that Plaintiff could perform a reduced range of light work is supported by substantial evidence, and Plaintiff has otherwise failed to meet his "burden of proving the existence and severity of limitations

---

[7] Plaintiff's argument that "[t]he ALJ's reliance on Qutub's findings, based on one examination of Plaintiff and a review of scant records, to dismiss Plaintiff's symptoms was not based on substantial evidence of the record," lacks merit for several reasons.  (ECF No. 10, PageID.1960). First, the ALJ did not rely solely on Dr. Qutub's opinion, which she found "generally persuasive," but considered the other "medical evidence of record," including treatment notes with Dr. McPhilimy.  (ECF No. 4-1, PageID.38).  Second, as discussed below, the ALJ relied on the opinions of the state agency physicians, who assessed similar limitations as Dr. Qutub, and which provide additional substantial evidence in support of the ALJ's RFC finding.

caused by [his] impairments" such that he required "a more restrictive RFC than that assessed by the ALJ" as to walking and/or standing. *See Lee v. Comm'r of Soc. Sec.*, 2020 WL 1139710, at *6 (E.D. Mich. Mar. 9, 2020).[8]  While Plaintiff argues that the ALJ improperly undermined his subjective complaints by relying on evidence of "normal gait, ability to toe and heel walk, and negative straight leg raises [which] do not speak to [his] ability or inability to perform the standing and walking durational requirements of light work" (ECF No. 10, PageID.1959), the ALJ's observation of Plaintiff's ability to perform certain physical movements in exams is clearly relevant to assessing the consistency of Plaintiff's statements concerning the *intensity, persistence, and limiting effects* of his knee pain with the physical capacity he actually demonstrated during numerous office visits. For example, Plaintiff testified before the ALJ that "[he] can't bend down [or] pick things up," "[c]an't squat, at all," and at times "[he'll] be limping on [his] right knee for a couple days, or [his] left knee for a couple days."  (ECF No. 4-1, PageID.57).  It was proper for the ALJ to discuss contrary observations in the medical records showing he could get up "spontaneously and unaided from a seated position" and comfortably get on and off an examination table, and that he regularly exhibited "normal gait" and "easy" balance, could turn around "smoothly," and had "5/5 strength" in his extremities.  (ECF No. 4-1,

---

[8] Moreover, Plaintiff overlooks that the VE testified that he could do the same jobs identified even if he were limited to standing or walking for *4 hours* in an 8-hour workday.  (ECF No. 4-1, PageID.69 ("[ALJ:] Now, what about if this person is just limited to standing and or walking for four hours in an eight-hour day, with the same limitations from my first hypothetical?  Would there be jobs that this person could do?  [VE:] Yes.  Same response to hypothetical one, same jobs, same numbers."); *see Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (stating remand is not required unless there is a reason to believe that it might lead to a different result).

PageID.1712; ECF No. 4-2, PageID.1841-42, 1833).   Plaintiff has not specifically identified any medical records of a physical exam reflecting a contrary finding of an abnormal gait or difficulty standing during the relevant period.  As such, Plaintiff has failed to demonstrate a "compelling reason" to disturb the ALJ's evaluation of a claimant's subjective symptoms, *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013), which is entitled to "special deference," *Biestek*, 880 F.3d at 788.[9]

For all of the foregoing reasons, substantial evidence supports the ALJ's RFC finding that Plaintiff could perform a limited range of light work.

2.    *The ALJ Properly Evaluated the State Agency Psychological Consultants' Opinions*

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinions of the state agency psychological consultants, Dr. Bruce Douglass, Ph.D., and Dr. Judith Straight, Psy.D., who opined in part that he would work "best" in a low stress work environment.

Specifically, on December 2, 2021, Dr. Douglass opined that Plaintiff "retains the capacity to perform simple, routine tasks on a sustained basis."   (ECF No. 4-1,

---

[9] Plaintiff's argument that the ALJ "does not provide any limitation to account for Plaintiff's chronic knee pain" is incorrect, as the ALJ accommodated such limitations in the RFC by imposing restrictions in his ability to climb ramps and stairs, balance, kneel, stoop, crouch, crawl, and climb ladders, ropes, or scaffolds.  (ECF No. 4-1, PageID.35).  Moreover, while Plaintiff argues that the ALJ "unfavorably evaluate[d] [his] symptoms based solely on objective medical evidence," a review of the ALJ's decision as a whole reflects that she considered, among other things, the location of his pain primarily in his left shoulder and headaches, his past surgical procedures and current conservative treatment "for pain management," the lack of a need for or use of assistive devices, and his completion of "daily exercises."  (ECF No. 4-1, PageID.34-38).

PageID.81).[10]  Dr. Douglass further noted that Plaintiff reported "trouble with anxiety and depression and that he gets easily agitate[d] around other[s].  He might not work well with the public and will work best alone or in small, familiar groups in low stress work settings." (*Id.*, PageID.80).

On May 17, 2022, Dr. Straight similarly opined that Plaintiff "retains the capacity to perform simple, routine tasks on a sustained basis."  (ECF No. 4-1, PageID.91).  She also opined that his cognition and concentration are impaired, he has difficulty with detailed tasks that require prolonged attention and focus, his social functioning is reduced and he may not work well with the general public and "may work best alone or in a small, familiar group with occasional interaction with coworkers and supervisors," and he "may struggle with high levels of unpredictable levels of work stress or frequent changes in work routine."  (*Id.*, PageID.91).

---

[10] As to specifics, Dr. Douglass opined that Plaintiff had no limitations in understanding remembering, or applying information; no limitations in adapting and managing oneself; mild limitations in interacting with others; and moderate limitations in concentration, persistence, or maintain pace.  (ECF No. 4-1, PageID.77).  As to sustained concentration and persistence limitations, he opined that Plaintiff was not significantly limited in his ability to "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "work in coordination with or in proximity with others without being distracted by them," and "make simple work-related decisions," but was moderately limited in his ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*, PageID.80).  In terms of social interaction, Dr. Douglass opined that Plaintiff was not significantly limited in his ability to "ask simple questions or request assistance," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," but moderately limited in his ability to "interact appropriately with the general public," and "accept instructions and respond appropriately to criticism from supervisors."  (*Id.*).

The ALJ found these opinions "persuasive," stating:

> State agency psychological medical consultants opined that the claimant was limited to simple, routine tasks, and on reconsideration added that he may not work well with the general public. The undersigned finds this opinion persuasive, as it is consistent with the medical evidence of record that demonstrated decreased energy, tangential thoughts, being on edge, and impaired social ability. As such, the undersigned also finds persuasive the psychiatric review issued on June 14, 2022, limiting the claimant to unskilled tasks.

(ECF No. 4-1, PageID.39) (citations omitted).

Based on the above, Plaintiff argues that "[d]espite finding these opinions persuasive, the ALJ does not adopt all of the consultants' opinion into Plaintiff's mental RFC," specifically the opinion concerning low stress work settings. (ECF No. 10, PageID.1962-63). His argument lacks merit for several reasons. First, the law is clear that "an ALJ's finding that an opinion is persuasive does not require the ALJ to adopt the opinion in its entirety." *Nasser v. Comm'r of Soc. Sec.*, 598 F. Supp. 3d 614 (E.D. Mich. 2022), *aff'd*, No. 22-1293, 2022 WL 17348838 (6th Cir. Dec. 1, 2022); *see also Borger v. Comm'r of Soc. Sec.*, 2021 WL 6297536, at *9 (N.D. Ohio Dec. 17, 2021) ("But an ALJ need not adopt all opined limitations, even if he finds the opinion persuasive."). As such, the mere fact that the ALJ did not adopt the state agency opinions verbatim does not constitute reversible error.

Second, although the state agency psychological consultants opined that a "low stress work setting" would be the "best" work environment for Plaintiff, the RFC is an assessment of the *minimum* conditions *necessary* for a claimant to complete work despite his limitations. The recent Eastern District of Michigan case, *Hammons v. Comm'r of Soc.*

*Sec.*, No. 2:21-CV-12933, 2023 WL 2263856, at \*2 (E.D. Mich. Feb. 28, 2023), aptly

explains the difference between "optimal" and "necessary" conditions:

> Put simply, the ALJ did not need to explain why she chose to
> incorporate only some of the doctors' recommendations because the
> recommendations opined on an optimal work environment from which
> Plaintiff "may benefit," rather than a work environment that reflects
> "the most [a claimant] can still do despite [his] limitations." 20 C.F.R.
> §§ 404.1545(a)(1), 416.945(a)(1). The difference is significant. For
> purposes of social security benefits, the question of an individual's
> residual functional capacity centers on the conditions necessary for the
> individual to complete work despite his limitations. See §§
> 404.1545(a)(1), 416.945(a)(1); *Herndon v. Comm'r of Soc. Sec.*, No.
> 1:20-CV-00885, 2021 WL 811660, at \*21 (N.D. Ohio Mar. 3, 2021)
> ("Either the claimant requires the accommodation or [ ]he does not.").
> The question of a claimant's optimal functioning is outside the scope of
> the residual functional capacity analysis. *Herndon*, 2021 WL 811660,
> at \*21. Indeed, "[o]ptimal conditions [ ] are not necessary ones."
> *Horinek v. Saul*, No. 1:19-cv-2141, 2020 WL 4340987, at \*9 (N.D.
> Ohio Jul. 7, 2020) (collecting cases), *report and recommendation
> adopted by* 2020 WL 4339327 (Jul. 28, 2020). Thus, when she
> completed the residual functional capacity analysis, the ALJ was not
> required to address all of the factors that might have described an
> optimal work environment for Plaintiff.

*Hammons*, No. 2:21-CV-12933, 2023 WL 2263856, at \*2 (citations to record omitted). In

short, while a "low stress" work environment may be "best" for Plaintiff, that does not

mean the other extremely restrictive limitations imposed by the ALJ – including "no more

than simple, short instructions," "can use judgment to make simple, work related decisions

with occasional work place changes," "no interaction with general public," and only

"occasional interaction with coworkers" (ECF No. 4-1, PageID.35) – are inadequate to

accommodate Plaintiff's needs.

Finally, to the extent Plaintiff argues that the ALJ failed to expressly articulate why

the RFC did not include a restriction for a low stress work setting, "the ALJ is not required

18

to explain each and every limitation and restriction he adopts, or conversely, does not adopt from a physician's opinion." *Giering v. Comm'r of Soc. Sec.*, No. 20-12353, 2022 WL 2713547 (E.D. Mich. July 13, 2022) (quotations omitted); *see also Stanley v. Comm'r of Soc. Sec.*, No. 20-11678, 2021 WL 3021265, at *7 (E.D. Mich. July 16, 2021) ("However, the ALJ was not required to adopt any one opinion verbatim so long as the RFC was supported by substantial evidence.").[11]

In conclusion, it is Plaintiff's burden "of proving the existence and severity of limitations caused by [his] impairments" such that he required "a more restrictive RFC than that assessed by the ALJ" as to his mental functional capacity. *See Lee*, 2020 WL 1139710, at *6. As the Commissioner correctly notes, Plaintiff only broadly argues that the RFC does not address the impact of stress on his mental work capacity, and "fails to point this Court to any definitive opinion or evidence that he was [more] limited due to stress." (ECF No. 12, PageID.1991). Thus, Plaintiff has failed to show reversible error in the ALJ's

---

[11] Any suggestion by Plaintiff that the ALJ failed to consider the impact of stress on his ability to work is belied by the record. First, the ALJ found that Plaintiff had a severe impairment of post-traumatic stress disorder. (ECF No. 4-1, PageID.33). Second, the ALJ expressly considered that Plaintiff "reported issues handling stress and changes in routine," but assessed that Plaintiff only had a "mild" limitation in adapting and managing himself based on evidence that he "gets along fine with authority figures," has "never been fired from a job due to issues getting along with others," and was "cooperative with his medical providers." (*Id.*, PageID.35). The ALJ also considered exams noting that Plaintiff had an "issue with controlling his emotions and being on edge" and demonstrated "anxious mood, loose associations, flight of ideas, tangential thoughts, decreased energy, and impaired social ability," but also noting that his "memory, concentration, and intellectual abilities were normal," and that he was "prescribed individual therapy and case management, but no medication." (*Id.*, PageID.38); *See Maloney*, 480 F. App'x at 808-09 (conservative and routine treatment is a valid consideration in assessing limitations). Finally, the ALJ cited to Plaintiff's psychotherapy treatment note on October 25, 2022, in which Plaintiff reported "doing well overall emotionally" and that he "has been having some feelings of relief from his crying spells and trauma symptoms." (*Id.*; see ECF No. 4-2, PageID.1896).

handling of the state agency psychological consultants' opinions, and her determination that it was not *necessary* to limit Plaintiff to a low stress work setting.

3.   *Plaintiff Fails to Show Reversible Error in the ALJ's Evaluation of the Third-Party Function Report*

Finally, Plaintiff argues that the ALJ erred by "unreasonabl[y]" dismissing his wife's third-party function report "solely on the grounds of her relationship to [him] as opposed to [its] inconsistency with the record or [his] own testimony."  (ECF No. 10, PageID.1965).

In her third-party function report, Plaintiff's wife stated that Plaintiff has "constant" migraine type headaches, neck pain, hand numbness, and knee injuries; he can prepare a peanut butter & jelly sandwich or warm up leftovers when she is not home; he can load the dishwasher, wipe the kitchen counters, and mow the lawn in a riding mower about "2-3 x's a week"; he goes outside "[e]veryday, weather permitting" and can do so alone, he can drive alone, he goes to the "party store" once or twice per week for "15-30 minutes visiting the owner"; he can become easily irritated with others and "doesn't socialize very often, especially in person"; and "[t]he pain and instability in his knees affect lifting, squatting, bending, standing, walking, kneeling, and stair climbing."  (ECF No. 4-1, PageID.196-201).  The third-party function report also stated that Plaintiff can walk "1/4 to 1/2 mile slow pace if feeling well" before needing to stop and rest, and he can resume walking after resting for "about 10 minutes."  (*Id.*).

The ALJ found the third-party function report "unpersuasive," stating:

> [Plaintiff's wife] alleges that [he] has constant migraines, sleeping issues, [n]eck and shoulder pain, and numbness in his hands.  [She] is

> not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. By virtue of the relationship as the claimant's spouse, [she] cannot be considered a disinterested third party whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Accordingly, the undersigned finds her assessments unpersuasive, as her observations are somewhat consistent with the medical record, but ultimately fail to support specific levels of limitations.

(ECF No. 4-1, PageID.39).

Plaintiff's assertion that the ALJ reversibly erred in her handling of the third-party function report lacks merit, for several reasons. First, the ALJ did not find the function report unpersuasive solely on the basis that it was from Plaintiff's wife, but expressly stated that his wife's observations did not medically speak to the "dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." Second, the ALJ did not flatly reject the third-party function report, but rather evenly considered it. Specifically, the ALJ recognized that Plaintiff's wife's observations were "somewhat consistent" with the medical record, meaning that the ALJ analyzed the evidence in the medical record against her observations and determined that while there were some consistencies, there were enough inconsistencies that her observations "ultimately fail to support specific levels of limitation" greater than those imposed by the ALJ. (*Id.*, PageID.39). Finally, Plaintiff, who bears the burden of proving the severity of his limitations, fails to explain, much less specifically prove, how his wife's third-party function report demonstrates a need for a more restrictive RFC than the one determined by the ALJ, and thus fails to show any reversible error in the ALJ's handling

of the third-party function report. *See Lee*, 2020 WL 1139710, at *6; *Kobetic*, 114 F. App'x at 173 (stating remand is not required unless there is a reason to believe that it might lead to a different result).

In sum, Plaintiff fails to show that the ALJ reversibly erred in her handling of the third-party function report from his wife.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 10)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 12, 2024          s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some

objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager